Thank you, Your Honor. Good morning, and may it please the Court. Dan Polzenberg for TRW. This case raises the question, would the Nevada Supreme Court adopt the risk-benefit analysis where a plaintiff claims a design defect outside the ordinary experience of the consumer, such as in considering the performance of obscure components under complex discussions? This is the risk-benefit analysis. It's not unusual to many of you, and it's the majority rule in the United States. It's a good rule. It produces good results in overall situations and in individual cases. But plaintiff argues a different rule, a very simple rule. Plaintiff argues this case as though it was still 1970, as though products liability were new and we're dealing with cutting-edge cases that have to do with things like decomposed mice in bottles of squirt soda and doors that don't work or cars. Let me interrupt. So I think we read your reasons, but it seems like this argument you're making is one that really needs to be made to the Nevada courts, if you're making it to us or Nevada. Sorry, Nevada courts. Sorry. Am I right that you removed to federal court? Yes, we did remove. So why did you remove this case to federal court if the main issue in it is a question of law that really needs to be resolved by the state courts? Which, as Friedland remembered, this issue wasn't raised until the beginning of trial when plaintiffs made a motion to say, let's just try this case under the consumer expectation theory and not even bring in evidence or experts having to do with risk-benefit analysis. So it wasn't clear from the beginning of the case or the middle of the case, it wasn't clear until trial that this was going to be the issue. And when Judge Dorsey addressed the issue at the beginning of the trial, she actually ruled, well, Nevada doesn't follow either the consumer expectation theory or the risk-benefit theory, so it didn't really become the critical issue it is now until we asked for the jury instructions. But I agree, you should certify the question. I think Nevada is the forum to decide this issue. And whether you decide this issue as a matter of state law under ERIE or whether you send the case or certify the question to the Nevada Supreme Court, we have to do the same predicate analysis. So is it your position that Nevada does not follow the consumer expectation test? We argued in the district court it does follow the consumer expectation test. Oh, okay. I was confused by your comment about that. Has it given any indication? Has the Nevada Supreme Court or legislature given any indication that they have any problem with that? No, they haven't. And here's where it came down. Well, why wouldn't we just follow existing law? That's what we always do. There isn't any existing Nevada law. Well, that's why I asked the question I asked. There is an existing test in Nevada. Well, every state that has adopted the risk-benefit analysis started with the consumer expectation. Well, they did, but our job is only to say, based on everything we now know about Nevada law, do we have doubt about the Nevada law? Exactly. And I don't understand how we could have doubt when there has been, as Judge Vogel said, no indication whatsoever that they would abandon the current law in favor of adding something else. I may have misunderstood. I thought Judge Vogel was asking whether the Nevada Supreme Court has indicated that they have a problem with the risk-benefit test. No. No, I'm sorry. I didn't mean to make it worse. No, do they have a problem with the consumer expectations test? I mean, it's been the law in Nevada for a long time, and I'm saying, are there any straws in the wind that suggest that they would look at it differently if we did certify it? I think there are several. I think if you look at the Allison versus Merck test, which Judge Foley, or excuse me, Judge Dorsey looked at to say Nevada would not have adopted risk-benefit, that actually what she was looking at is a plurality opinion where two justices of the Nevada Supreme Court said that they wouldn't adopt Restatement Section 402A, comment K, which has to do generally with pharmaceutical products and contains a risk-benefit analysis. She said, well, the majority rejected Justice Rose's risk-benefit analysis. That's not what happened in that case. Well, the facts of that case aren't complicated. The decision is there were three opinions. Two justices rejected comment K. Judge Rose would accept comment K, and two other justices, there were only five at the time, also would adopt comment K. So a majority of the Nevada Supreme Court went for the risk-benefit analysis and comment K, but another majority said there was a question in fact that precluded some reach. So let me ask just a follow-up. Yes. I understand why you think this is a complex case, but the way it was presented to the jury by the plaintiff was, you know, you expect that when your car runs head-on into a lamppost, the airbag is going to deploy. That's their theory. So why wasn't it within the court's discretion to say, well, that's the theory that the jury should decide the case? Let me answer that in several steps. First of all, those weren't the facts of the case. This isn't the case where the car simply hit a power pole. Well, they did some other stuff first. The point is, the plaintiff isn't saying the airbag should necessarily have deployed when all the other things were happening, but when it hits a hard object, it's supposed to deploy. That's the basic theory. It's not very complicated. No. First of all, we've got a complex product and a complex situation in which the accident occurred. The product doesn't work, and I don't think ordinary consumers understand that. The product does not work, as they argue, that when you hit an object at a certain speed, the airbag should deploy. Quite the opposite. They're purposefully designed that in a situation where you have concatenated events that could move the occupants of the vehicle closer, the driver closer to the steering wheel, that it would be dangerous for it to deploy. And that's why I say there are two aspects here, whether you're dealing with obscure components and ordinary people do not understand the way an airbag sensor and control module are supposed to work, and you're dealing with that. Is that the test for what's complicated is how to make the thing? That seems like a very. . . I think there are two tests. That seems like a very odd test, because for those of us who are not technological, everything is complicated to make, but that doesn't make them complicated in real life. I wouldn't know how to make this glass, but it doesn't make a drinking glass a complicated thing. I agree with you, Your Honor. I think the language obscure component is taken. . . I've borrowed it from the California cases. And I think here, if you look at the California cases, they look at two things to decide whether a component is obscure. First of all, whether the ordinary person would understand how it operates, not how it's made. Many things are difficult to figure out how they operate or how they're made, but the operation, whether it's complicated, whether it's complex, whether in the language of the Sewell case, S-O-U-L-E, whether it's beyond the understanding of an ordinary person. But Nevada law doesn't ask us to ask these questions. Nevada's never been asked whether it asks the questions. Nevada's only dealt with very simple situations, steering wheels that wouldn't turn, brakes that wouldn't operate, power doors that would close on people. But aren't we, as a federal court, supposed to look at what the state law is, and if they've got a general rule, we don't certify every question, which there's a different set of facts within the general rule. I mean, it seems like we've got to do the best we can. Let me go back to the adoption of the general rule, as we set out in our briefs. And remember, Judge Dorsey did not think, when Nevada adopted the general rule of products liability in 1970, in a case called Guinness v. Mabes Hotel, she did not think the Nevada Supreme Court adopted the consumer expectation test. And I agree. What they adopted was they went to the language in Illinois, in a case called Dunham, where the Illinois Supreme Court set out the various rules, including the receipt and second test, where they said you look at it from the point of view of the consumer. And instead, quoting Dunham, the Nevada Supreme Court said that the definition of defect is those products which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function. The consumer isn't mentioned in that. Nevada quoted the Illinois test. And Illinois said that that standard only applies to simple situations, situations that were cutting edge in 1970, when we didn't have strict products liability and were just adopting it. Now you don't have those kinds of cases. Those kinds of cases are resolved. Now you have complex components under situations where people do not understand. And so Judge Dorsey said that this was not an adoption of the consumer expectation standard. And, indeed, that test doesn't talk about the consumer. It talks about an intended function. Now who intends the function? The person who intends the function is the person who designs the product. This product performed exactly as intended. So I don't think that Guinness v. Mapes adopted a standard that precluded this issue. Plaintiffs argue that Nevada has never adopted risk-benefit. Nevada has never rejected risk-benefit. But it had model jury instructions, and those were used here, weren't they? Well, the model jury instructions don't mean very much. They're written by a state bar committee. I spend a lot of my practice doing appeals to the Nevada Supreme Court on what's wrong with these model jury instructions. That model jury instruction was taken from a case called Ward v. Ford Motor Company. And the issue in that case, while in the footnote they have a jury instruction that looks very much like the model instruction, the only issue in that case was whether Nevada would follow California and reject the standard that a product to be defective has to be unreasonably dangerous. Nevada refused to go that way, and that was the issue in the case. They weren't adopting this jury instruction. This case has never been, this issue has never been in front of the Nevada Supreme Court. And so in addition to Allison, where a majority of the court looked at risk-benefit analysis and seemed to accept that under Cum and Kay, and Cum and Kay is different. I admit the Nevada Supreme Court has never addressed this issue in another case. Give me a second, Your Honor. In Robinson v. GGC, the Nevada Supreme Court said that there are two, member plaintiffs are arguing a very simple standard of product's liability. They're saying that the public policy in Nevada is that if there is a defect, the manufacturer should be liable for that. But Nevada in 1991, 21 years after Guinness v. Mapes, three years before Allison v. Merck, Nevada said that product's liability has a compound goal of encouraging manufacturers to make products safe without unduly burdening them with excessive liability without fault. If you're going to make products safe, you have to look at the risks and the benefits of the products generally. And Nevada has to look at that standard, and that standard would be the standard for adopting risk-benefit analysis. If you look, we've sent out a number of articles and cases. If you look at the 50-state review, if you look at the South Carolina decision, they list the majority of courts being those that adopt the risk-benefit analysis. And those are usually courts that have started with consumer expectation and evolved, just like Illinois. But while I first say that Nevada would take that same approach and address risk-benefit as the natural evolution of their adopting the Illinois standard, I also have to point out that Nevada is listed in that 50-state survey as a court that hasn't decided the issue. This isn't a case where Nevada has a standard that they apply in every situation. So I think this is an important case to send to the Nevada Supreme Court. And it just makes good policy as well. We're looking at the policy here. If this court were to adopt a standard for Nevada that would apply products liability, strict liability in situations where most of the time the design of the product would be unsafe for individuals, then that would just cause more injury than it would cause harm and that would defeat the purpose under Robinson versus GGC. So I think this is the perfect case to present this question. I can't think of a better case because we're dealing with a product that is incredibly sophisticated, that is beyond the understanding of the individuals, the ordinary consumers. They don't know how this control module works. They don't know that it considers the situation. And that's the problem with plain and simple case to the jury where they came in and said, look, in any moderate to severe front collision, an airbag should deploy. Well, that's not the situation. In many of those circumstances, that would cause more harm than good. So adopting this standard would be bad science. It would be bad policy. And I think it would be bad law. And although we definitely look at a situation where in risk benefit, whether we're looking at safety versus cost, here we're actually looking at safety versus safety. And that's the kind of issue that a jury needs more to understand. Let me also take a second to say what I'm not addressing. Plaintiffs have come in and amici have come in and said that Nevada would not adopt the part of the restatement third that requires plaintiff to make a prima facie case, requires plaintiff to show an alternative design, when to present experts. I'm not arguing that. And this case doesn't present that because they did have an alternate design and they certainly did have experts. But I firmly believe that Nevada would adopt a standard that would look at risk benefit analysis the same way California does. Thank you, Your Honor. I'd like to save the balance of my time. We may do that. We'll hear next from Mr. Robbins. Please, the court. Clay Robbins on behalf of Nicole Thompson. The court asked the correct question to begin with. There is one law currently in the state of Nevada governing the issue of what is and what is not a product defect. That law was given to this jury. What Judge Dorsey did in addition to giving the law that existed in 2014 and the law that exists as of this very date is she then allowed the parties to prove whether or not this product was unreasonably dangerous in whatever fashion they chose. We chose pursuing it along the lines of consumer expectations. But since we were also told that we should expect to have to respond to risk benefit analysis, we also had evidence to address risk benefit as well. But the plaintiff is the individual that chooses the theory upon which to pursue so long as the law and the facts support. And that is what the plaintiffs did in this case. We chose to proceed in accordance with the then existing law and currently existing law of the state of Nevada. The counsel goes at length to describe the intricate science of the AECM, the Airbag Electronic Control Monitor in this case. And without a doubt, it's complex. But in a consumer expectation case, in a case governed by Nevada law, you don't get into the details of how the product works. What you look at is what are the expectations of the consumer. And here, I don't think there could be any question but that a consumer who was sitting in a vehicle traveling 30 miles an hour and hits the power pole coming to an abrupt stop, would expect the safety benefits of an airbag. And it's not just speculation on the part of the consumer, as the court well knows, because we addressed it at length both in the trial court and in our brief. That was the representation made by the manufacturers to those who would be using this product. They should expect an airbag, the protection of an airbag, any time. There is a moderate to severe, not sometimes, not every now and then, every time, 100% of the time, without fail. Let's say we agree with you on this issue. Could you speak to the substantial evidence issue? Could you talk about what evidence there was presented to the jury that if the airbag had deployed, the plaintiff's injuries would have been less or different or nonexistent? Absolutely, Your Honor. We presented that testimony through, in the first instance, Dr. Warner. Dr. Warner, a medical doctor, a degreed physicist, described where the injury happened. He also described where Ms. Thompson's body was during the course of the incident itself. He disputed the interpretation of where the accident happened that was proffered by TRW. So we have how the accident, how the injury happened and where it happened. Bolstered with that, we then have the accident reconstruction evidence by Mr. Berg, as well as Mr. Benedict, and it was also commented upon by Mr. Caruso, using exemplars that showed Ms. Thompson's positioning within the neon itself at various points during the course of the occurrence. So the jury had both where and how the dissection and the lumbar injury occurred, I should mention. It wasn't only the lumbar injury that was mentioned by Dr. Warner. It was Dr. Cavens and Dr. Kaplan as well. So we have that medical testimony as to the injury, when it happened, where it happened. You then have the position of Nicole Thompson throughout the course of the injury event. You then have testimony concerning the airbag itself, how it functions, when it functions, how long it takes, the fact that the airbag extends outwardly toward the person sitting there. I think I'm understanding from this answer that it's basically an inference that the jury puts these things together and figures out that it couldn't have happened that way if the airbag had deployed. It's an inference premised upon scientific testimony, expert testimony, and it's not a very broad stretch of an inference either because we led that jury all the way along as to where that injury occurred, when it occurred, the position of her body during the course of the accident. You then have the exemplar of the 1998 neon that was brought into the courtroom. You have the exemplar of the airbag so the jury could see. If she had gotten that airbag, she would have been kept away from the visor and therefore would not have sustained the dissection that she sustained when her head was anchored to the visor and her torso was allowed to go forward. So too, she would not have suffered the violent deflection at her waist had she had the benefit of that airbag. So it's not just like the plaintiffs went in there and said, this accident happened, we were injured, close up our cases. We had expert testimony and we had enough that would allow and did allow this jury to make an informed and appropriate decision that this airbag would have prevented the plaintiff from moving into the areas where there is no question that she received, at least we can say there's no question, where she received this injury. So it's not sheer speculation. It is to a certain degree an inference, but it's informed by expert scientific testimony. And your position is that that type of inference is appropriate for a jury to make and so there's no sufficiency of the evidence problem? Absolutely. Absolutely. If it is appropriate for a jury, and it is, for them to make inferences from circumstantial evidence, here you have an inference from medical testimony, from physics, from accident reconstructionists, and you have the jury actually see the product in the courtroom itself and could have made and did make, just as Judge Dorsey did, in her 50 page plus page with 200 footnotes decision, detailed all the evidence that showed why it was it was a reasonable and appropriate inference for this jury to make from the expert testimony that had been presented. The bottom line, I believe, on this, and so far as we've only heard counsel's argument on the Nevada law, is that I think we're a little late in the game to be asking for certification. We have waited very long. If that was an issue, I will grant that we raised the issue the day before or shortly before trial, but certainly when the first filing was made in this court to this court, that request, that recommendation, could and should have been done earlier. Well, that's not really how our process works. That is, when a notice of appeal is filed, the case is not yet assigned to a panel, so there's no one else to make that decision but us, but I am curious as to whether there was any request. I should know the answer to this, but I don't recall. Was there any request made of the district court to certify the question to the Nevada Supreme Court because it also has the authority to do that? There was never any such request. Certainly none that I recall and none that is contained in the record. Well, we're limited to the record. So I will rely upon the record as well, Your Honor. So insofar as this case is concerned, the case was properly given to the jury based upon the Nevada law as it currently exists. The Nevada law, there's been a lot of argument about risk-benefit and how perhaps it's a more enlightened approach coming from California. We have both risk-benefit and consumer expectation. Coming from California, I will tell you that juries not only in California but elsewhere across the United States have been able to handle consumer expectation analysis in a number of complex automotive product liability actions, actions that involve rollovers, which Nevada's Supreme Court in the Ward v. Ford case was a rollover and injection to consumer expectation, seatbelts, rollover stability, and most importantly, airbag non-deployment. You've got the cases that were cited in the briefs. The Honda case, I think. You've got Akeem v. Honda. You've got Bresnahan even before that. You've got Silvertieri in the Fourth Circuit of New York, DiBartolo in Connecticut. You've got Sigler v. American Honda, the Sixth Circuit in Tennessee, all utilizing consumer expectation because the question is, under what circumstances can and does a reasonable consumer expect the protection of an airbag? And certainly here where it's not just an ethereal expectation where you have the representation in the owner's manual that was concordant by TRW that they would receive this type of protection. I think it's a reasonable and appropriate and legally supportable argument and 32%. And in this case, it was appropriately handled, I think, by Judge Dorsey because what she said is, all right, you get the law that we have in Nevada, but as an issue of proof, not on a legal instruction, but as an issue of proof, you plaintiffs and defendants may then approach this by either consumer expectation or by risk-benefit. And there's a number of courts in the United States that approach it that way. There's one in a case that was cited by the defendants, the Michalowski case. I have a butchered ending, and I apologize to Michalajek v. Ford, which was also a seatback case. And what the court says there is, look, the plaintiff is the master of his complaint. The plaintiff believes that they will prove the seatback case based upon consumer expectation. We see a reasonable basis in the law to do that, so that's the instruction that the jurors will get. Now, in informing the jury as to what a reasonable consumer would expect, then the parties may, at their discourse, decide it or present the evidence through either consumer expectation or through the risk-benefit analysis that's left up to the parties, but it's a question of proof, of evidence, not of the legal instruction that is given to the jury. Unless the court has any other questions. I think not. I think we understand your position. Thank you. And you have a bit of rebuttal time remaining. I do. Thank you, Your Honor. To just that last point, it is true Judge Dorsey did not think that Nevada law precluded risk-benefit analysis. She actually said that. She said the case can go to the jury on both. The problem that I have is the jury wasn't instructed on both. They were instructed on an instruction that appeared to the jury to be only on consumer expectation. It's language taken from legal cases, and I have said before, I submit that those legal cases do not adopt in Nevada a strict consumer expectation theory. They adopt something much more vague than that, and Judge Dorsey agreed that Nevada did not adopt a strict consumer expectation theory. And Judge Dorsey thought that both issues should go to the jury, but I didn't get an instruction on both. I think Judge Dorsey was very close to the right legal result, but with the language that went to the jury, they were of the opinion, and plaintiffs argued, no, you only look at what the consumer expects. And therefore, even under Judge Dorsey's law of the case, I was deprived of fair trial. McCullochek from Illinois, yes, a beautifully written opinion. And remember, Illinois adopted the same law that Nevada adopted, the same language. And Illinois says that that language, out of Guinness v. Mabes, is the foundation for risk-benefit analysis. I'm not saying Nevada adopted consumer expectation in 1970 and never moved from it. I am saying, no, they adopted something much more subtle than that, and something that lets you have risk-benefit analysis. But I couldn't argue that to the jury, because the jury was not instructed on this principle. This is something that the Nevada Supreme Court needs to decide, and their cases have gone a tortuous way around that. It's not enough to say, well, it looks like in 1970 they were looking at consumer expectation, and so we're going to stick with that forever. What if they hadn't decided Guinness v. Mabes? Counsel, did you make a request of the district court to certify this question? No, the issue was raised, as counsel says, the day of, the day before, right at trial. Well, that may be the reason, but the answer is you didn't ask at that level. No, we didn't. We didn't know before trial that this was even going to be an issue. But at the point where it became clear that the trial question, that this mattered to what the jury instructions would be, in your view, and what would be tried at trial, you could have asked for a stay while you sought certification? No. Theoretically. Because at this point, in your view, if we certify it and got an answer in your favor, the trial would have to be redone. Yes, it would. But realize the jury instruction issue didn't become an issue until the end of the trial because the judge made clear that she thought both principles were a matter of law. This case was. . . So wait, now I'm confused about when it first arose. It first arose at the beginning of trial. Plaintiffs came in and said we shouldn't have to present. Neither side should be allowed to bring in evidence of risk-benefit analysis. Judge Dorsey said no, that's an issue at trial. Then at the close of trial, we asked for a jury instruction on risk-benefit analysis, and Judge Dorsey said no. Let me take ten seconds to say this case was so simple. A prima facie case requires plaintiffs to prove that the design defect caused their injury. They didn't prove that. Dr. Warner, their biomechanical, could not talk about it. He precluded her from talking about it because he didn't know about airbags. Excuse me. Chris Caruso, their airbag deployment expert, was not allowed, precluded by the judge, from talking about causation because he didn't know about the medicine. They had nobody to connect the dots. Thank you, counsel. I appreciate your time. We appreciate the arguments of both counsel. The case just argued is submitted, and we will stand adjourned.
judges: Graber, Friedland, Fogel